IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MEDFORD DIVISION

JOHN ERIC SMITH,

    Plaintiff,

v.

UNITED STATES OF AMERICA,

    Defendant.

Civ. No. 1:16-cv-00690-CL

ORDER ON POST-TRIAL
DAMAGES ISSUES

---

CLARKE, Magistrate Judge.

This case comes before the court on two post-trial damages issues: (1) Is Defendant United States of America ("Defendant" or "the United States") entitled to a set-off of any amounts of the award for past reasonable medical expenses? And, (2) what is the proper calculation of present value of the award for future medical expenses?[1] For the reasons below, the Defendant is not entitled to a set-off of any portion of the award for past reasonable medical

---

[1] In the Defendant's initial brief (#91), it also argued that if Mr. Smith were to stay on Medicaid, his award for future medical expenses should be reduced to $0. Mr. Smith refuted the possibility he would stay on Medicaid in his Response (#96). In its Reply (#103), the United States did not address this issue. As such, the Court finds that the United States has abandoned this argument and the Court will not address it.

Page – 1 – ORDER

expenses, and the present value of the award for future medical expenses is the amount of the original award.

## BACKGROUND

The factual background of this case is well-known to the parties, so the Court will briefly summarize the relevant facts.

Plaintiff John Eric Smith ("Mr. Smith") suffered devastating injuries because of negligent medical treatment that failed to timely diagnose his MRSA infection. The evidence at trial showed that his past medical care resulted in $1,847,009.06 of reasonable medical bills. Mr. Smith was on Medicaid at the time of his injury, so he was not responsible for any out-of-pocket costs associated with those bills. The State of Oregon holds a lien for $447,074.85, which represents the amount actually paid by the Oregon Medicaid program administered as part of the Oregon Health Plan for his medical care to date. The Oregon Health Authority oversees the Plan. The balance of the medical expenses was written off by the medical providers likely based on agreement for treating Medicaid patients. Mr. Smith will continue to need extensive medical care for the rest of his life. The court following trial entered Findings of Fact and Conclusions of Law finding in favor of Mr. Smith and awarding the following damages: $1,847,009.06 in past medical expenses; $3,800,000.00 in future medical expenses; and $7,000,000.00 in non-economic damages, for a total award of $12,647,009.06.

## DISCUSSION

I. <u>Mr. Smith is entitled to the amount of the lien held by the State of Oregon.</u>

Under the Medicaid statutes, states are required to have individual Medicaid recipients assign payments from any liable third party, which were already paid for through Medicaid, to the state. 42 U.S.C. § 1396a(25); § 1396k. In Oregon, ORS 659.830 and 743B.470 function to

create an automatic right of assignment in such circumstances. According to the Declaration of Jose Ybarra (#92), the Oregon Health Plan paid $447,074.85 of the total charges billed by medical providers for Mr. Smith's care, and the state has a lien in that amount. The parties, and the Court, agree that Mr. Smith is entitled to an award of past medical expenses in the amount of the lien.

II. Is Defendant United States of America entitled to a deduction of Mr. Smith's written-off medical expenses prior to entry of judgment in this case?

   *A. Medicaid*

By way of background, Medicaid is a joint state and federal program through which the federal government provides funding to states to provide medical care to qualified indigent individuals. 42 U.S.C. § 1396 et seq. The federal government is required to reimburse states for at least 50% of the costs incurred in providing patient care. § 1396d(b). In Oregon, the federal government provides approximately 65% of the funding, while the state provides the remaining 35%. *See* Richard H. Mills Decl. (#93); Def.'s Post-Trial Mem., Ex. 1 ("West Report") at 4; 42 U.S.C. § 1396b; ORS chapter 414.

Unlike Medicare, which is funded by specific revenues, funding for Medicaid comes from annual congressional appropriations of general revenues. 42 U.S.C. § 1396-1. In other words, workers and employers contribute to a specific Medicare fund collected through payroll taxes, held in trust, and then paid out to those individuals who contributed to the fund when they become eligible. *See* West Report. Medicaid, on the other hand, is not funded by a specific trust fund, and is instead considered "unfunded" because its funding comes from general revenues. *Id.* Awards paid under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2674, are also paid out of unfunded general revenues. *U.S. v. Harue Hayashi*, 282 F.2d 599, 603 (9th Cir. 1960).

   *B. The collateral source rule*

The majority of states, including Oregon, have adopted some form of the collateral source rule, which provides "that if an injured party received some compensation from a source wholly independent of the tortfeasor, such compensation should not be deducted from what [the injured party] might otherwise recover from the tortfeasor." *Reinan v. Pacific Motor Trucking Co.*, 270 Or. 208, 213 (1974); *see also White v. Jubitz*, 347 Or. 212, 237 (2009) ("'[t]he vast majority of courts to consider the issue' follow the common-law rule articulated in section 924 of the *Restatement* and permit plaintiffs to seek the reasonable value of their expenses without limitation to the amount that they pay or that third parties pay on their behalf.") (emphasis in original) (quoting *Wills v. Foster*, 892 N.E. 2d 1018, 1031 (Ill. 2008)). In those cases, an injured plaintiff will often get "double recovery," or a windfall, unless a third-party lien needs to be satisfied. *See White*, 347 Or. at 219-20. The policy rational is often that the tortfeasor should not benefit from the third-party payments. *See id.* The plaintiff will also have often paid premiums for third party insurance benefits that should not benefit the wrongdoer defendant. *Id.* at 220. Finally, the rule is intended in part to deter wrongdoers. *Gypsum Carrier, Inc. v. Handelsman*, 307 F.2d 525, 534 (9th Cir. 1962). There is some criticism of the rule as inconsistent with the compensatory goal of tort law.

*C. Mr. Smith is entitled to the full amount billed for past reasonable medical expenses.*

The United States argues that the collateral source rule, as set forth in ORS 31.580 does not preclude a deduction of the written off medical expenses in this case for several reasons. First, Plaintiff never incurred these written off medical bills because he was never liable for the written-off amount. Second, defendant United States, as a significant contributor to the Medicaid program as administered by the Oregon Health Plan, is simply not a "third party source wholly independent of the tortfeasor." The United States argues that the collateral source

does not even apply because of these first two points. Third, even if the collateral source rule applies, Defendant argues that the written-off medical expenses can be deducted under ORS 31.580 because Medicaid, as opposed to Medicare, should not be considered a "federal social security benefit" under ORS 31.580(1)(d). Finally, the United States argues that not allowing a deduction for the written-off medical expenses would be inconsistent with the FTCA because the statute only allows compensatory damages.

Under the FTCA, courts are required to assess damages according to the law of the state in which the tort occurred, which in this case is Oregon. *See* 28 U.S.C. § 1346(b); § 2674. Therefore, the Court turns to Oregon law to determine whether Mr. Smith may recover the $1,399,934.21 difference between the $1,847,009.06 total awarded by this Court for past medical expenses, and the lien amount of $447,074.85 for which Mr. Smith is liable to the State [2].

Under ORS 31.710(2)(a), economic damages "means objectively verifiable monetary losses including but not limited to reasonable charges necessarily <u>incurred</u> for medical . . . services[.]" (Emphasis added.) Defendant United States argues that, because Mr. Smith is not liable for the write-off amount, he has not <u>incurred</u> the write-off amount, and therefore is not entitled to recover that amount.

In *White v. Jubitz*, 347 Or. 212 (2009), the Oregon Supreme Court, sitting en banc, examined the meaning of "incurred" in the statute. The plaintiff in *White* received medical treatment for an injury. *Id.* at 215. Medicare paid $13,400 of the approximately $37,600 total for his medical care. *Id.* In accordance with the applicable Medicare laws, the providers accepted the $13,400 as payment in full and wrote off the balance. *Id.* The question presented in

---

[2] Although Defendant has not explicitly conceded this point, it is clear to the Court that this amount represents the amount written off by the medical provider.

that case was whether the plaintiff was entitled to recover the total amount of the medical providers' reasonable charges or whether his recovery was limited to the amount that Medicare paid to those providers.

In answering that question, the court examined the collateral source rule in Oregon and the meaning of "incur" in ORS 31.710. *See White*, 347 Or. 212. The court began by discussing the history of the common law collateral source rule in Oregon, concluding that Oregon law had traditionally allowed a plaintiff to recover from a defendant even when the plaintiff had already received, or had a right to receive, benefits from a third party; i.e., a plaintiff was entitled to receive a "double recovery." *Id.* at 219. The court then turned to ORS 31.580, Oregon's statutory collateral source rule enacted in 1987, to see how it modified the common law rule. *Id.* at 222-30. The court determined that ORS 31.580 gave courts discretion to deduct collateral benefits from awards to plaintiffs, but that it specifically precluded the deduction of certain collateral benefits, including "federal Social Security benefits." *Id.* at 223. The court held that "federal Social Security benefits" as used in the statute was comprehensive and included Medicare benefits.

The defendant in *White* argued that, because neither the plaintiff nor Medicare ever became liable for the written-off amount, it was never 'incurred' under ORS 31.710. The court disagreed:

> A plaintiff who is injured and who obtains necessary medical treatment becomes "liable or subject to" reasonable charges for that treatment and thereby "incurs" them. ORS 31.710 does not require that a plaintiff also pay or otherwise satisfy those charges. Whether or by what means the plaintiff or a third party satisfies medical charges is a matter between the plaintiff, the third party, and the medical providers. ORS 31.710 does not make a plaintiff's right to assert a claim for economic damages against a tortfeasor dependent on those arrangements.

*White*, 347 Or. at 234. Accordingly, the court held that the plaintiff was entitled to the entire amount billed because (1) he had incurred the entire amount under ORS 31.710 and (2) the write-off amount was a "federal Social Security benefit" exempt from deduction under ORS 31.580(1)(d).

Justice Kistler wrote a dissenting opinion, in which Justice Balmer joined. *White*, 347 Or. at 244-57. Justice Kistler disagreed with the majority's interpretation of "incurred." *Id.* at 250-52. He argued that, because the Medicare statutes capped the medical charges, any charges above the Medicare cap—i.e., the written-off amount—were not actually "incurred." *Id.* at 252. Additionally, he argued that any amounts awarded above the Medicare-capped charges were "antithetical to the principle that 'a plaintiff should recover *only* such sums as will compensate a plaintiff for the injury suffered as a result of a defendant's wrong.'" *Id.* at 251 (quoting *Yamaha Store of Bend, Oregon, Inc. v. Yamaha Motor Corp.*, 310 Or. 333, 344 (1990)) (emphasis in original).

In *Cohens v. McGee*, 219 Or. App. 78 (2008), the court examined a similar situation, but one in which the write-off amount was a result of Medicaid, not Medicare. In *Cohens*, the only issue was whether the write-offs were also benefits from a federal Social Security program. *Id.* at 81. The court held that "Medicaid, like Medicare, is a federal Social Security program, and, pursuant to ORS 31.580(1)(d), a court may not reduce a plaintiff's award of damages by the amount of write-offs that an injured party receives pursuant to Medicaid coverage." The United States contends that *Cohens* was wrongly decided because the court failed to analyze the difference between the funding for Medicare and Medicaid.

Application of *White* and *Cohens* to this case is not perfectly straightforward. In those cases, the federal social security benefits that are not deductible under ORS 31.580 clearly came

from third-party sources, not the defendant, making application of the collateral source rule simple. In this case, in which the United States is the Defendant, it is not so clear that federal Medicaid benefits are actually from a third party, and therefore subject to Oregon's statutory collateral source rule. The United States says it already resolved Mr. Smith's medical expenses as part of its 65% contributions to the Oregon Health Plan, and, therefore, it would be unfair to also require the United States to pay the written off amount. Mr. Smith argues that the medical expenses were resolved by the Oregon Health Plan, not the United States, and again points to *White* and *Cohens* for the proposition that he is entitled to the full write-off amount by way of the collateral source rule. The state also has a valid lien against a third party- The United States.

In 2013, the Arizona district court examined a case with similar legal questions. *See Jacobs v. U.S.*, No. 10 cv-0479 TUC AWT, 2013 WL 3282082 (D. Ariz.). In *Jacobs*, the plaintiff brought an FTCA claim against the United States for injuries suffered in a traffic collision. *Id.* at *1. The plaintiff asked for $493,878.80 in past medical expenses, which was equal to the total amount billed. *Id.* at *10. Arizona's Medicaid agency paid $125,459.13, and the remaining amounts were written off. *Id.* The court then turned to the issue of whether the write-off amount should be regarded as having come from the defendant United States. *Id.* at *12. The court reasoned that, "[i]n one sense, they have come from the United States because— as the Medicaid provider—it has negotiated discounted rates with healthcare providers." *Id.* But in light of Arizona's broad application of the collateral source rule, the court found that the write-offs were a collateral source because they were "not actually paid by the United States." *Id.*

The same is true in this case, and this Court comes to the same conclusion. Here, the write-off amount was not paid by the Defendant; it was written off by the health care providers. Furthermore, although the United States provides a portion of the funding for the Oregon Health

Plan, it is this state-run program that actually makes the payments to providers, and it is the state that holds a lien on those amounts paid in this case. These three facts individually, and collectively, indicate that the Medicaid benefits, including the write-off amount, do not come from the United States. Accordingly, the Court finds that the write-off amount is a collateral benefit under ORS 31.580 and, as a federal Social Security benefit under ORS 31.580, cannot be deducted from the damages awarded.

The United States final argument contends that the FTCA simply does not authorize any damages that are not compensatory and that awarding the write-off amount, for which Mr. Smith is not liable, makes them punitive in nature. The United States' argument is undermined, however, by one of the cases to which it cites in its brief. "The government contends to not deduct Medicare expenses from Siverson's award constitutes punitive damages because the effect is a windfall double recovery for Siverson. The government's rationale would essentially always find recovery from a collateral source to be "punitive" and ignores the collateral source doctrine's purpose of preventing a windfall to the defendant." *Siverson v. United States*, 710 F.2d 557, 560 (9th Cir. 1983). Furthermore, Oregon law under *White* has determined that written-off amounts are "economic damages" under ORS 31.710(2)(a), and therefore not punitive damages. Accordingly, awarding the write-off amount in this case does not convert the award into an award of punitive damages.

In sum, under *White*, Mr. Smith is entitled to recover the full amount of the reasonable medical bills he incurred, including all amounts written off. Under *Cohens*, write-offs that are the result of Medicaid benefits are considered federal social security benefits under ORS 31.580(1)(d) and are therefore exempt from deduction as a collateral source. Finally, even though the Defendant in this case is the federal government, the write-off is a collateral source

because the benefit does not come from the Defendant, but instead from the state and the medical providers. Accordingly, Mr. Smith is entitled to recover the full $1,847,009.06 billed in past medical expenses.

The collateral source rule is well established law in Oregon. The fit to the facts in this case for the reasons set forth above is less clear. Plaintiff sustained very serious injuries and as reflected by the courts damage award, is entitled to significant damages. The court however respects the legal and policy arguments made by the United States as it relates to the large medical expense write off on this case and whether Plaintiff should also in fairness recover those sums in light of the courts damage award. This case presents a situation that the Oregon Legislature may well want to analyze to determine if any amendments to ORS 31.710(2)(a) and/or ORS 31.580 are appropriate.

III. Present value calculation of future medical expenses

Both parties submitted supplemental expert reports to help this Court determine the proper present value calculation of the approximately $3,800,000 award for future medical expenses. As at trial, the Court finds the qualifications, methodology, and calculations of both experts to be creditable. That poses a difficulty for the Court however, because the Defendant's expert has calculated the present value of future medical expenses to be $2,841,883 (West Report at 1), whereas Mr. Smith's expert has calculated the present value to be $3,979,782 (Pl.'s Resp., Ex. 3 ("Rubenson Report") at 3 (#91).)

Present value is calculated by finding the net discount rate, which is equal to the discount rate (also known as the interest rate) minus the growth rate (also known as the inflation rate). The Defendant's expert calculated the discount rate (3.7%) by using the 20-year historical average on 10-year U.S. Treasury Notes and calculated the 20-year growth rates for various

consumer price index categories that he determined best represented the items listed in life care plans presented at trial. (West Report at 2.) Using these rates, the Defendant's expert calculated the net discount rate for his chosen consumer price index categories. (*Id* at 3.) The majority of these calculated rates were positive numbers, meaning that the discount rate was greater than the growth rate for a given category. (*Id.*) A positive net discount rate results in a reduction of the amount awarded.

Mr. Smith's expert used a similar methodology, but used different consumer price index categories, and a different discount rate (3.3%) than Defendant's expert. (*See* Rubenson Report.) Mr. Smith's expert also argued that the typical pattern of inflation rates being lower than interest rates (thereby producing positive net discount rates, as Defendant's expert calculated) is actually reversed "with most medical care items and personal care services." (*Id.* at 2.) This means, according to Mr. Smith's expert, that the net discount rate for most medical care items and personal care services would be a negative number. A negative net discount rate results in a present value that is "greater than the simple sum of annual figures." (*Id.* at 3.) Mr. Smith's expert's calculations do just that and come to an amount greater than that originally awarded by the Court. (*Id.*)

Given that reasonable experts can disagree even as to whether the present value of Mr. Smith's future medical expenses is greater than or less than the amount awarded in the Court's Findings of Fact and Conclusions of Law, the Court finds that the original award amount of $3,800,000 is a reasonable estimate of the present value of Mr. Smith's future medical expenses.

## CONCLUSION

For the reasons above, Mr. Smith is entitled to $1,847,009.06 in past medical expenses and $3,800,000 in future medical expenses.

IT IS SO ORDERED and DATED this \_\_\_6\_\_\_ day of November, 2018.

                                                  MARK D. CLARKE
                                                  United States Magistrate Judge